1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11

12

13

GINY FRANCOIS, HECTOR MOISES
DAVILA ZURITA, and JEAN CARLOS
PINTO BAUTISTA,

Petitioners,

14        v.

15    CAMMILLA WAMSELY, *et al.*,

16            Respondents.

Case No. C25-2122-RSM-GJL

**ORDER GRANTING PETITIONERS'
MOTION FOR TEMPORARY
RESTRAINING ORDER AND TO
ISSUE ORDER TO SHOW CAUSE**

17

18

19

20

21

22

23

24

### I.    INTRODUCTION

This matter comes before the Court on Petitioners' Motion for Temporary Restraining

Order ("TRO"). Dkt. #8. Respondents have filed a Response. Dkt. #15. Petitioners have also

filed a Motion requesting the Court issue an order to show cause as to why their habeas petition

should not be granted and an expedited briefing schedule. Dkt. #2. No party has requested oral

argument, and the Court finds that it can rule without it. For the following reasons, the Court

will grant Petitioners' Motions.

ORDER GRANTING MOTIONS FOR TEMPORARY RESTRAINING ORDER
AND TO ISSUE ORDER TO SHOW CAUSE - 1

## II.   BACKGROUND

Petitioner Pinto Bautista is an asylum seeker from Venezuela.  Dkt. #5 at ¶1.  Fearing violence due to their "opposition to forced participation in marches supporting the government[,]" he fled with his wife and daughter in March 2024.  *Id*. at ¶ 1-2.  They waited in Mexico from April to August 2024 for their U.S. CBP One appointment, where they "were kidnapped by a cartel" and "only released because [his] daughter was ill and vomiting[,]" but the cartel "took all the money [they] had."  *Id*. at ¶ 2.  Upon receiving an appointment date, the family entered the United States at Brownsville, Texas on August 24, 2024.  *Id*. at ¶ 3.  They were released on humanitarian parole, giving them status to apply for work permits, and told to appear in court in July 2025.  *Id*.  Petitioner and his family moved to Eastern Washington and received work permit in October 2024.  *Id*. at ¶ 4.  Since then, Petitioner has worked for Tyson Foods, his wife worked at a restaurant, and his daughter enrolled in school.  *Id*.

Petitioner Pinto Bautista timely filed his family's asylum applications in February 2025.  *Id*. at 5.  The family appeared for their first court hearing on July 2, 2025, in Seattle, "about a four hour drive from [sic] home" and were rescheduled for October 10, 2025, to have time to find an attorney.  *Id*. at ¶ 6.  To his knowledge, Petitioner and his family attended every scheduled check-in and court hearing, including his wife's "selfie" check-ins via an app every Tuesday.  *Id*. at ¶¶ 7-8 ("We asked the ICE official if I had to check in, and they said my wife would be the head of the family and check in for all of us.").

Petitioner Pinto Bautista and his family hired attorney Alejandra Lozano and arranged to meet her at their court hearing on October 10, 2025.  *Id*. at ¶ 11.  That day, the family drove to the Seattle courthouse early but were informed by their attorney that the hearing date had changed to October 29, 2025, before a different Seattle judge.  *Id*.  Attorney Lozano said she mailed the

notice to Petitioner. *Id.* Petitioner affirmed the new date via the immigration court's online system before leaving the courthouse and later received it via mail. *Id*. at 12; Dkt. #6, Ex. L.

On October 12, 2025, Petitioner was detained by Immigration and Customs Enforcement ("ICE") officers while leaving Walmart. *Id*. at ¶ 14. The officers said he "was under arrest for not attending court." *Id*. Petitioner tried to explain the change to the court date, but he was detained anyway and told his case would now be in Tacoma. *Id*. Petitioner was then transferred to the Northwest ICE Processing Center ("NWIPC"). *Id*. Petitioner Pinto Bautista has no criminal record. Dkt. #5 at ¶ 17.

Petitioner Davila Zurita is an asylum seeker from Venezuela who fled "after [he] was harmed and then threatened by the National Guard for protesting against the government." Dkt. #4 at ¶ 1. Upon entering the United States in September 2023, he was detained, passed a Credible Fear Interview, served with a Notice to Appear and comply with check-ins, and released on parole in October. *Id*. at ¶ 2. Petitioner then moved to Yakima, Washington. *Id*. To his knowledge, Petitioner complied with all check-ins and requirements, including weekly photos, monthly video calls, ICE home visits, and in-person ICE appointments. *Id*. at ¶ 3.

Petitioner Davila Zurita filed his asylum application on May 12, 2024. *Id*. at ¶ 4. He received his work permit and began working as a delivery driver. *Id*. ICE reduced the frequency of his required visits and calls, but he continued to submit weekly photos. *Id*. Petitioner was told that his first court date would be in April 2027 in Seattle.

In September 2025, Petitioner Davila Zurita received a call from ICE for an in-person check-in that Wednesday. *Id*. at ¶ 5. On September 17, Petitioner appeared for his appointment and was immediately detained, though he was given no reason for the revocation of his parole. *Id*. at ¶ 6. Petitioner only received a piece of paper written in English, which ICE refused to translate for him, that stated his release was cancelled because "[t]he alien failed to comply with

ORDER GRANTING MOTIONS FOR TEMPORARY RESTRAINING ORDER
AND TO ISSUE ORDER TO SHOW CAUSE - 3

the conditions of release." *Id*. ("An ICE office told me in Spanish that I was being detained and this would be the only time I was addressed in Spanish that day."); Dkt. #6, Ex. G.  Other than a traffic ticket he was given until February 2026 to pay, Petitioner has "no criminal record here in the United States or anywhere in the world. *Id*. at ¶ 7.  Petitioner was transferred to NWIPC. *Id*. at ¶ 8.

Petitioner Francois is an asylum seeker from Haiti.  Dkt. #3 at ¶ 1.  Petitioner fled Haiti out of fear of further gang violence:

> I had to flee Haiti because I was kidnapped for refusing to work for a violent gang that controlled the area where I lived.  The gang shot me in the head and also demanded that I have sexual intercourse with members of the gang.  I still have lingering pain in my head today that requires medication.

*Id*.  Upon entering the United States around August 7, 2024, Petitioner was granted humanitarian parole the same day, issued an I-94, and released from detention.  *Id*. at ¶ 2.  He was told to appear in immigration court on May 28, 2025, in Seattle.  *Id*.  Petitioner moved with a friend to Georgia, received work authorization, and began working at a meat factory.  *Id*. at ¶ 3.  He filed his asylum application in January 2025.  *Id*.  He unsuccessfully tried to transfer his case to Georgia.  *Id*. at ¶ 4.

Petitioner Francois appeared at court in Seattle on May 28, 2025.  Id. at ¶ 5.  On a motion from the Department of Homeland Security ("DHS") and against Petitioner's objections, the judge dismissed his removal proceedings.  *Id*. at ¶ 5.  Petitioner was immediately arrested in the hallway outside the courtroom and transported to NWIPC.  *Id*. at ¶ 6.  He has no criminal record here or in any other country.  *Id*. at ¶ 9.  As of the filing of the habeas petition, Petitioner Francois' timely appeal of the dismissal remains pending before the Board of Immigration Appeals ("BIA").  *Id*. at ¶ 7.

ORDER GRANTING MOTIONS FOR TEMPORARY RESTRAINING ORDER
AND TO ISSUE ORDER TO SHOW CAUSE - 4

1     Petitioners' habeas petition was filed on October 28, 2025, along with a Motion

2  requesting an Order to Show Cause and expedited briefing schedule.  Dkts. #1, #2.  At the time

3  of filing, all Petitioners were being detained at NWIPC.  *Id*. at ¶¶ 15-17.  However, on October

4  31, 2025, Petitioner Pinto Batista through counsel filed the instant TRO motion, alerting the

5  Court that Petitioner Pinto Bautista was transferred from NWIPC to a facility in New Mexico the

6  day before.  Dkt. #8 at 1.  Counsel learned of this transfer after Petitioner's wife was told via a

7  phone call that Petitioner was being transferred "to an unknown location."  *Id*. at 4.  Petitioner's

8  counsel reached out to Respondents' counsel to request Petitioner's return to Washington State,

9  noting "that the undersigned's preference was to avoid the need to seek relief via a motion for

10  TRO[.]"  *Id*.  Respondents' counsel advised him that Petitioner was being transferred to Otero

11  ICE Processing Center in New Mexico and that, despite Petitioner's court hearing in Tacoma

12  scheduled for November 17, "her clients were not willing to return Mr. Pinto to this district or to

13  provide notice as to the other petitioners in this case."  *Id*. at 5.  Later on October 31, 2025,

14  Petitioner's counsel filed an update to notify the Court that Petitioner Davila Zurita was also

15  transferred out of state to the Otero ICE Processing Center in New Mexico.  Dkt. #13.

16     Petitioner's TRO motion requests that the Court: (1) order Respondents to immediately

17  return Petitioners' Pinto Bautista and David Zurita to the Western District of Washington; (2)

18  order Respondents to immediately release Petitioners from detention and enjoin any transfer

19  during these proceedings; and (3) enjoin Respondents from re-arresting or re-detaining

20  Respondents "absent compliance with constitutional protections," including "at minimum" pre-

21  deprivation notice and a hearing.  Dkts. #8-1 (original proposed order), #13-1 (amended proposed

22  order after second transfer).

23     On October 31, 2025, the Court directed Respondents via Minute Order to file a response

24  by noon on Monday, November 3, 2025.  Dkt. #12.  Instead, Respondents filed their Response

on October 31 at 4:40pm.  Dkt. #15.  The Response states that, "[g]iven the overwhelming volume of new habeas petitions and TRO motions currently being filed and the timeframe involved, Federal Respondents regretfully are unable to provide information specific to Petitioners' immigration history at this time."  *Id*. at 1-2.  However, citing to DHS' "broad authority under 8 U.S.C. § 1231(g) and the Ninth Circuit's decision in *GEO Group v. Newsom*, Respondents simply argue that they have the authority to place and transfer Petitioners pending removal or decisions on removal.  *Id*. at 2 (citing *GEO Group*, 50 F.4th 745 (9th Cir. 2022).

### III.    DISCUSSION

A TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).  A party seeking a TRO must establish: (1) likelihood of success on the merits; (2) likelihood of suffering irreparable harm absent preliminary relief; (3) that the balance of equities is in his favor; and (4) that an injunction is in the public interest.  *See id*.  Alternatively, showing that there are "serious questions going to the merits" can satisfy these Winter requirements by showing the "balance of hardships [] tips sharply towards the plaintiff" and the remaining two factors.  *See All. for the Wild Rockies v. Cottrell*, 632, F.3d 1127, 1131-35 (9th Cir. 2011).

#### 1.  Likelihood of Success on the Merits

First, the Court finds that Petitioners are likely to succeed on their due process claims. The Constitution's Due Process Clause prohibits the Federal Government from depriving any person in the United States of "life, liberty, or property, without due process of law[.]"  U.S. Const. Amend. V.  This Constitutional right does not hinge on citizenship or status but includes "all persons within the United States, including aliens [non-citizens], whether their presence is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 679 (2001).  "'It is well established that the Fifth Amendment entitled aliens [non-citizens] to due process of law'

in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

Courts within the Ninth Circuit have looked to *Mathews v. Eldridge*'s three-factor test to evaluate due process of non-citizens in immigration proceedings. 424 U.S. 319 (1976); *see Kumar v. Wamsley*, No. 2:25-cv-01772-JHC-BAT, 2025 WL 2677089, at *2-3 (W.D. Wash. Sep. 17, 2025) (applying *Matthews* and collecting cases); *Ramirez Tesara v. Wamsley*, No. 2:25-cv-01723-MJP-TLF, 2025 WL 2637663, at *2-3 (W.D. Wash. Sept. 12, 2025) (applying *Matthews* and collecting cases).

Under *Matthews*, the Court considers: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. Any argument that ICE acted within its authority has no affect on a claim contending that detention violates Constitutional Due Process. *See Kumar*, 2025 WL 2677089, at *2 n.2.

These *Matthews* factors weigh in Petitioners' favor. First, the Supreme Court has held that Petitioners' private interest "is the most elemental of liberty interests—the interest in being free from physical detention by one's own government." *Hamdi v. Rumsfeld*, 524 U.S. 507, 529 (2004). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The Supreme Court "has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691644, at *5 (E.D. Cal. Mar. 3, 2025) (collecting cases). "Courts in this circuit have found that the

1  'government's subsequent release of [an] individual from detention creates 'an implicit promise'

2  that the individual's liberty will be revoked only if they fail to abide by the conditions of their

3  release.'" *Ramirez Tesara*, 2025 WL 2637663, at *3 (quoting *Calderon v. Kaiser*, No. 25-cv-

4  06695-AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey v. Brewer*,

5  508 U.S. 471, 482 (1972); *see Kumar*, 2025 WL 2677089, at *3 n.3 (citing *E.A. T.-B. v. Wamsley*,

6  No. C25-1192-KKE, 2025 WL 2402130, at *3 (W.D. Wash. Aug. 19, 2025); *Ramirez Tesara*,

7  2025 WL 2637663, at *3; *Becerra*, 2025 WL 691664, at *5; *Garcia v. Andrews*, No. 1:25-cv-

8  01006 JLT SAB, 2025 WL 2420068, at *9 (E.D. Cal. Aug. 21, 2025); *Pinchi v. Noem*, No. 5:25-

9  cv-05632-PCP, 2025 WL 2084921, at *4 (N.D. Cal. July 24, 2025); *Maklad v. Murray*, No. 1:25-

10  cv-00946 JLT SAB, 2025 WL 2299376, at *8 (E.D. Cal. Aug. 8, 2025); *Calderon*, 2025 WL

11  2430609, at *2; and *Ramirez Clavijo v. Kaiser*, No. 25-cv-06248-BLF, 2025 WL 24192623, at

12  *4 (N.D. Cal. Aug. 21, 2025)).

13  All Petitioners in this case have a very strong private interest in not being re-detained.

14  Upon initial release, they all acquired a due process liberty interest. Petitioners' reliance on the

15  interest is shown and has continued to grow through their months of living and working in the

16  United States while complying with all ICE requirements and applying for asylum. While

17  Petitioners' "non-citizens' liberty interests are not equivalent to those enjoyed by citizens, that

18  does not negate Petitioner[s'] liberty interest in not being detained." *Kumar* at *3 (docket cite

19  removed).

20  Second, the risk of erroneous deprivation without procedures also weighs in Petitioners'

21  favor. As Petitioners argue, "[t]heir re-detention must still 'bear[] [a] reasonable relation' to a

22  valid government purpose—here, preventing flight or protecting the community from dangerous

23  individuals." Dkt. #8 at 10 (quoting *Zadvydas*, 533 U.S. at 690). Petitioners' re-detainments

24  appear arbitrary, if not baseless. The record shows that Petitioners complied with all

ORDER GRANTING MOTIONS FOR TEMPORARY RESTRAINING ORDER
AND TO ISSUE ORDER TO SHOW CAUSE - 8

1   requirements, including court hearings, and were given no reasoning or notice or opportunity to

2   respond prior to their arrests or in the weeks that followed. Specifically, for Petitioner Pinto

3   Bautista, his re-detention allegedly based on failing to appear at court when his hearing was, in

4   fact, rescheduled seems blatantly baseless. Nothing in the record suggests any Petitioner was a

5   flight risk or danger to the community. All of the above suggests arbitrary re-detentions, creating

6   a high risk of erroneous detentions.

7       Furthermore, "it is undeniable that the risk of an erroneous deprivation would decrease if

8   Petitioner[s] had received notice of the basis for [their] re-detention[s] and an opportunity to be

9   heard before a neutral decisionmaker prior to [their] arrest[s]." *Kumar*, 2025 WL 2677089, at

10  *3. "[T]he fact 'that the Government may believe it has a valid reason to detain Petitioner[s]

11  does not eliminate its obligations to effectuate the detention[s] in a manner that comports with

12  due process." *Ramirez Tesara* at *4 (quoting E.A. T.-B, 2025 WL 24-2130, at *4). In sum, this

13  second *Matthews* factor weighs in Petitioners' favor.

14      Third and finally, the Government's interests in Petitioners' re-detainments and transfers

15  out of this District are minimal. Respondents have not shown a flight risk, danger to the

16  community, or any other reason necessitating detainment, nor have they shown that providing

17  pre-detention hearings and additional procedures would impose any burdens. *See gen*. Dkt. #15.

18  Beyond generally stating that "transfer decisions are made based on operation priorities,"

19  Respondents have also not shown any legitimate government interest in transferring the two

20  Petitioners here outside of this District pending this case, especially how in any way this

21  "ensure[s] efficient processing and participation in removal proceedings." *Id*. Petitioner Pinto

22  Bautista is now thousands of miles away from his scheduled hearing before the Tacoma

23  Immigration Court on November 17, 2025, and both are far from counsel. *See* Dkt. #8 at 4.

24  Overall, Respondents have not shown a heightened interest or how their actions have done

ORDER GRANTING MOTIONS FOR TEMPORARY RESTRAINING ORDER
AND TO ISSUE ORDER TO SHOW CAUSE - 9

anything but cause more confusion and potential delays, not to mention constitutional violations

that are in the entire public's interest to protect. Accordingly, this third *Matthews* factor weighs

in Petitioners' favor.

### 2.   Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably

constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)

(quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, "in cases involving a constitutional

claim, likelihood of success on the merits usually establishes irreparable harm." *Baird v. Bonta*,

81 F.4th 1036, 1048 (9th Cir. 2023). "The Ninth Circuit has also recognized that immigration

detention itself can impose a number of irreparable harms on non-citizens who remain in custody,

including economic hardships and negative effects on other aspects of human welfare." *Kumar*,

2025 WL 2677089, at *4 (citing *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) and

*Leiva-Perez v. Holder*, 640 F.3d 962, 969 (9th Cir. 2011). Accordingly, because Petitioners have

demonstrated a likelihood of success on the merits of their Due Process claim, Petitioners have

also demonstrated irreparable harm.

### 3.   Balance of Equities and Public Interest

"The third and fourth factors . . . merge when the Government is the opposing party."

*Nken v. Holder*, 556 U.S. 418, 435 (2009). As already noted, it is in the public interest to issue

injunctions against constitutional violations because "public interests concerns are implicated

when a constitutional right has been violated, because all citizens have a stake in upholding the

Constitution." *Hernandez*, 872 F.3d at 996. It is certainly in the public's interest to ensure "that

individuals are not deprived of their liberty and held in immigration detention because of . . . a

likely unconstitutional process." *Id*. Respondents have provided no evidence or reasoning

otherwise. *See gen*. Dkt. #15. Accordingly, these factors also weigh in Petitioners' favor.

ORDER GRANTING MOTIONS FOR TEMPORARY RESTRAINING ORDER
AND TO ISSUE ORDER TO SHOW CAUSE - 10

### 4. Scope of Relief

Petitioners' TRO Motion requests the immediate return of Petitioners Pinto Bautista and Davila Zurita to this District, immediate release, and an order barring Respondents from transferring Petitioners during this litigation and/or re-arresting or re-detaining them without notice and a hearing. *See* Dkts. #8-1, #13-1. Petitioners have also filed an *ex parte* Motion requesting that the Court issue an Order to Show Cause and an expedited briefing schedule, requiring Respondents to show why their habeas petition should not be granted within seven days. *See* Dkt. #2. Because Petitioners have satisfied the four *Winter* factors, the Court finds that a TRO is warranted and will grant the requested relief. *See Kumar*, 2025 WL 2677089, at *5 (holding that granting immediate release preserves the status quo pending a final judgment on the merits). The Court will also grant the request for an order to show cause but will allow Respondents ten days to respond. *Id*. at *6.

### IV.   CONCLUSION

Having considered the instant TRO Motion, Petitioners' Motion requesting an order to show cause, Respondents' Response, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Petitioners' Motion for Temporary Restraining Order, Dkt. #8 is GRANTED. Respondents and all their officers, agents, servants, employees, attorneys, and persons acting on their behalf, in concert or in participation with them, are:

   a. ORDERED to immediately return Petitioner Jean Carlos Pinto Bautista and Petitioner Hector Moises Davila Zurita to the Western District of Washington and immediately release them from detention on the conditions of release in place prior to their arrests.

ORDER GRANTING MOTIONS FOR TEMPORARY RESTRAINING ORDER
AND TO ISSUE ORDER TO SHOW CAUSE - 11

b. ORDERED to immediately release Petitioner Giny Francois from detention on the conditions of release in place prior to his arrest.

c. ENJOINED from re-arresting or re-detaining Petitioners in connection with existing removal orders without prior approval from this Court or until this Order expires.

(2) Petitioners' *Ex Parte* Motion for Order to Issue Order to Show Cause and Issue Expedited Briefing Schedule, Dkt. #2, is GRANTED.

a. Respondents shall file their return to the habeas petition within ten (10) days of this Order, including any arguments seeking to dismiss the petition. This shall not be separately noted as a motion to dismiss under Local Civil Rule 7(d).

b. Petitioners shall file any reply to Respondents' return within four days of the filing of Respondents' return.

c. The Clerk shall note Petitioner's habeas petition, Dkt. #1, for this Court's consideration on November 21, 2025.

DATED this 3rd day of November, 2025.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTIONS FOR TEMPORARY RESTRAINING ORDER
AND TO ISSUE ORDER TO SHOW CAUSE - 12