HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GINY FRANCOIS, HECTOR MOISES DAVILA ZURITA, and JEAN CARLOS PINTO BAUTISTA,<br><br>Petitioners,<br><br>v.<br><br>CAMILLA WAMSELY, *et al.*,<br><br>Respondents. | Case No. C25-2122-RSM<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 |

## I.  INTRODUCTION

This matter comes before the Court on Petitioners Giny Francois', Hector Moises Davila Zurita's, and Jean Carlos Pinto Bautista's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. The Court has reviewed the petition, the Response filed by the Government, Dkt. #17, Petitioners' Traverse/Reply, Dkt. #19, and the remainder of the record. For the following reasons, the Court will grant Petitioners' habeas petition.

## II.  BACKGROUND

The Court incorporates the facts presented in the Court's prior Order granting Petitioners' temporary restraining order and issuing an order to show cause, Dkt. #16 at 2-6, and adds or reiterates the following relevant facts.

### A. Petitioner Francois

Petitioner Francois entered the United States around August 7, 2024, and was granted humanitarian parole because he feared further gang violence in his native Haiti. *See* Dkt. #3 at ¶ 1; *see also* 8 U.S.C. § 1225(b)(1)(A)(i) (permitting immigration officers to order non-citizens removed without further review "unless the [non-citizen] indicates either an intention to apply for asylum . . . or a fear of persecution"). He applied for asylum in January 2025. *Id*. at ¶ 3. On May 28, 2025, after Petitioner Francois' parole was revoked and he was ordered removed and transferred to Northwest ICE Processing Center ("NWIPC"), Petitioner again claimed fear of returning to Haiti. *See* Dkts. #3 at ¶ 5, #18 at ¶ 7. DHS then referred him to United States Citizenship and Immigration Services ("USCIS") for a Credible Fear Interview. *See id*. From the record before the Court, it does not appear that his interview ever took place. On June 26, 2025, Petitioner Francois' filed an appeal of the immigration judge's Order of Expedited Removal, which remains pending. *See* Dkts. #3 at ¶ 7, #18 at ¶ 8. Thus, due to his pending appeal, Petitioner Francois' removal order is not final. *See* 8 U.S.C. § 1101(a)(47).

### B. Petitioner Davila Zurita

Upon entering the United States and being detained, Petitioner Davila Zurita was initially served an Order of Expedited Removal on September 13, 2023. *See* Dkt. #18 at ¶¶ 10-11. However, on October 11, 2023, USCIS conducted a Credible Fear Interview and made a positive credible fear finding. *See* Dkts. #4 at ¶ 2, #18 at ¶ 12-13. He filed his asylum application on May 12, 2024. *See* Dkt. #4 at ¶ 4. Petitioner Davila Zurita states that he complied with all ICE check-ins and requirements, but he "can recall one occasion where I had trouble checking in, but that day the application was having problems. ICE told me that they knew the application was having problems this day and that it was not an issue for me." *Id*. at ¶ 3. The Government states that Petitioner violated his parole conditions on two occasions: first, on December 5, 2024, he

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 2

reported to DHS that he had been pulled over by Tieton Police Department three days earlier, but he "was required to immediately report any police contact[,]" and second, on June 15, 2025, he failed to report to DHS. Dkt. #17 at ¶¶ 16-17. Ultimately, Petitioner Davila Zurita's parole was revoked due to these alleged violations. *See* Dkt. #17 at 5.

**C. Petitioner Pinto Bautista**

Petitioner Pinto Bautista and his family were also released on humanitarian parole in August 2024. *See* Dkt. #5 at ¶ 3. He filed his family's asylum applications in February 2025. *See id*. at 5. To his knowledge, he complied with all necessary check-ins and requirements, including attending his wife's appointments. *See id*. at ¶ 6. In this Court's Order granting Petitioners' TRO motion, it appeared that Petitioner's re-detention was based on failing to appear in court for a hearing that was, in fact, rescheduled, which the Court considered "blatantly baseless." Dkt. #16 at 9. Now, the Government posits that Petitioner violated his parole on two occasions: first, that he failed to report to the Yakima ICE office on October 10, 2024, after receiving a Form G-56 "Call-in Letter" on September 4, 2024; and second, that he failed to report to the Intensive Supervision Appearance Program ("ISAP") office to enroll in SmartLink after being instructed to do so at his Yakima ICE office check-in on August 25, 2025. *See* Dkt. #17 at 5. Petitioner does not recall receiving a letter to report to the Yakima office in 2024, though he "went to an appointment in Yakima on October 9, 2024, to provide my fingerprints and signature, and to take a photo for my work permit application." Dkt. #20 at ¶ 3. Regarding August 25, 2025, Petitioner states that this was the only appointment he attended at the Yakima ICE office, though it was due to a letter that his wife received to report there. *Id*. at ¶ 5. There, they updated ICE with their current address and were told "to go check-in at the office in Kennewick instead." *Id*. They drove to the Kennewick office "that same day" and asked if Petitioner Pinto Bautista needed to check-in as well, but "they said my wife would be head of the

family and check in for all of us . . . [and] had her download an app . . . to send a selfie every Tuesday." *Id*. Petitioner again asked if he "should do the app too, and they [the Kennewick ICE office] said no." *Id*. Ultimately, Petitioner Pinto Bautista's parole was revoked based on these violations. *See* Dkt. #17 at 6.

### D. Procedural Posture

On October 31, 2025, Petitioners filed a TRO motion, requesting that the Court: (1) order the Government to immediately return Petitioners Pinto Bautista and David Zurita, who had been transferred to an ICE detention facility in Arizona, back to this district; (2) order the Government to immediately release Petitioners and enjoin any further transfers during these proceedings; and (3) enjoin the Government from re-arresting or re-detaining Petitioners absent compliance with constitutional protections. *See* Dkts #8-1 (original proposed order), #13-1 (amended proposed order after transfer). Finding that Petitioners are likely to succeed on the merits of their petition, as well as the other required factors, the Court granted the TRO motion. *See* Dkt. #16.

The Court also granted Petitioners' motion requesting an order to show cause and expedited briefing schedule, Dkt. #2, and ordered the Government to respond with any dismissal arguments against the petition within ten days. *See id*. at 12. The Government filed said Response on November 13, 2025, followed by Petitioners' "Traverse" or reply on November 17. *See* Dkts. #17, #19.

### III. DISCUSSION

Federal courts have authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). In this case, Petitioners contends that their arrests and detentions violate the Due Process Clause of the Fifth Amendment to the United States Constitution, which prohibits the federal government from depriving any person of "life, liberty, or property, without

due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id*. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)). Determining whether an administrative procedure provides the process constitutionally due:

> generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context." 53 F.4th 1189, 1206-07 (9th Cir. 2022). The parties both discuss how application of the *Mathews* text applies here, and the Court will consider each *Mathews* factor in turn to determine whether Petitioners' arrests and detentions comport with constitutional due process requirements. In so doing, the Court is mirroring the application of this test used by other judges in this District. *See, e.g., E.A. T.-B. v. Wamsley, et al.*, No. 25-1192-KKE, -- F. Supp. 3d --, 2025 WL 2402130 (W.D. Wash. Aug. 19, 2025).

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 5

Petitioners' interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S. Ct. 2633, 159 L. Ed. 2d 578 (2004). That Petitioners were arrested in public, detained for weeks and even transferred to other states, and remain at risk of detention without this Court's TRO undoubtedly deprives them of an established interest in liberty. *See* Dkt. #16 at 7-8.

The Government argues that "Petitioners' release was always subject to conditions of release, and they knew that they could be re-detained if they violated the conditions of parole." Dkt. #17 at 11. However, the Government provides nothing beyond the Declaration of Deportation Officer Rodriguez, Dkt. #8, to assert: (1) that Petitioner Pinto Bautista was sent a letter and failed to appear, as well as failed to report to the ISAP office to enroll in the app, nor do they refute his statements that he never received a letter, complied with all known check-ins, and was told by Government agents that only his wife needed to download the app; and (2) that Petitioner Davila Zurita failed to report in June 2025, nor do they address that one of his check-ins failed due to the app being faulty, potentially the same alleged "failure to report," which the Government acknowledged and cleared.

Furthermore, the Government's argument that Petitioner Davila Zurita violated his parole by failing "to immediately report any police contact" is contradicted by the Government's own "Interim Notice of Parole," which states that Petitioner "will notify ISAP immediately *or as soon as possible* should [he] have contact with law enforcement for any reason." Dkt. #6-6 (emphasis added). By reporting the incident three days later, the Court fails to see how Petitioner Davila Zurita failed to comply with his parole conditions.

Finally, the Government does not provide any reasoning for Petitioner Francois' detention other than that his "removal proceedings were terminated, and he was processed for expedited removal," nor do they address his pending appeal or pending referral for a Credible

Fear Interview. Dkt. #17 at 8. Accordingly, this first *Mathews* factor weighs in Petitioners' favor.

The second *Mathews* factor considers whether a particular process results in a risk of erroneous deprivation of a protected interest. The Government argues that Petitioners "have no right to a hearing before an immigration judge[,]" Dkt. #17 at 11, but given the above, "it is undeniable that the risk of an erroneous deprivation would decrease" if notice and a hearing had occurred. *Kumar v. Wamsley*, No. 2:25-cv-01772-JHC-BAT, 2025 WL 2677089, at *3 (W.D. Wash. Sep. 17, 2025. "[T]hat the Government may believe it has a valid reason" for detainment "does not eliminate its obligations to effectuate the detention in a manner that comports with due process." *Ramirez Tesara v. Wamsley*, No. 2:25-cv-01723-MJP-TLF, 2025 WL 2637663, at *2-3 (W.D. Wash. Sept. 12, 2025) (quoting *E.A. T.-B*, 2025 WL 2402130 at *4). The Court agrees with Petitioners that the risk of erroneous deprivation of their liberty interest in the absence of a pre-detention hearing is high under the facts of this case. Accordingly, this second *Mathews* factor weighs in their favor.

In the final *Mathews* factor, the Court considers the Government's interest in arresting and detaining Petitioners without a hearing. The Government clearly has an interest in detaining removable non-citizens under certain circumstances to the extent needed to ensure that they do not abscond or commit crimes. But where Petitioners (A) have complied with check-ins, (B) have followed all the rules, (C) have pending asylum applications and Credible Fear Interviews and appeals, and (D) have at least one positive credible fear finding, as well as that (E) there is no change in their particular factual circumstances prior to the arrests, the Government fails this factor. There is no evidence on the record that Petitioners are flight risks or dangers to the community. The Court finds that the Government's interest here is low, and this third *Mathews* factor weighs in favor of Petitioners. *See also E.A. T.-B.*, *supra*.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 - 7

Based on this review of the *Mathews* factors, the Court finds that Petitioners have a protected liberty interest in their continuing release from custody and that due process requires Petitioners receive hearings before an immigration judge before they can be re-detained. Accordingly, the Court will grant the petition.

## IV. CONCLUSION

Having reviewed the relevant briefing and remainder of the record, the Court hereby finds and ORDERS that Petitioners' Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, Dkt. #1, is GRANTED. The Court ORDERS that Petitioners shall be released from custody immediately and may not be re-detained until an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate.

DATED this 5th day of December, 2025.

_____
Ricardo S. Martinez
United States District Judge